**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

|  |  |  |
|---|---|---|
| I. Mayo Read, Ellen P. Read, and I. Mayo Read, Jr., | ) ) ) ) | |
| Plaintiffs, | ) ) | 2:06-cv-483-CWH |
| vs. | ) ) ) | |
|  | ) | **ORDER** |
| Chicago Title Insurance Company, and Commonwealth Land Title Insurance Company, d/b/a Lawyers Title Insurance Company, | ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the Court on the defendant Chicago Title Insurance Company ("Chicago Title's") motion for summary judgment.

Background

Viewed in the light most favorable to the plaintiffs, the facts are as follows. The plaintiffs own three lots on Wadmalaw Island: Lots 1, 2, and 3. Marshlands border the lots on the south. A neighbor owns Lot 4, which borders the east of Lot 3. The Leadenwah River borders the east of Lot 4. The plat shows a drainage easement over Lot 4 providing "creek access" to the Leadenwah River for Lots, 1, 2, and 3.

The plaintiffs obtained a dock permit and entered the dock on the Leadenwah River via Lot 4. The Lot 4 landowner has challenged the permit and the plaintiffs' use of his land. On November 2, 2005, the plaintiffs filed a claim with Chicago Title Insurance Company, who insures titles to Lot 1 and Lot 2. On December 8, 2005, Chicago Title denied the claim.

Chicago Title has moved for summary judgment, claiming that the insurance policies do not provide coverage for the plaintiffs' right to creek access through the drainage easement. The plaintiffs argue that because the title insurance policies to Lots 1 and 2 incorporate the plat by reference, the insurance policies cover the plaintiffs' right to use the drainage easement.

Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Summary judgment is proper only where the moving the party is entitled to judgment as a matter of law, where it is clear what the truth is, and where no genuine issue remains for trial. Poller v. Columbia Broadcasting Sys., Inc., 368 U.S. 464 (1962).

Jurisdiction

Federal jurisdiction in this case is based upon the diversity of citizenship between the plaintiffs and defendants. Accordingly, the Court must apply South Carolina substantive law. Erie R.R. Co. v. Thompkins, 304 U.S. 64 (1938).

Interpretation of Insurance Policies

Under South Carolina law, the interpretation of an insurance policy is a matter of law. TC X, Inc. v. Commonwealth Land Title Ins. Co., 928 F.Supp. 618, 624 (D.S.C. 1995). "Insurance policies are subject to general rules of contract construction. Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary, and popular meaning." Sloan Constr. Co., Inc. v. Central Nat. Ins. Co. of Omaha, 236 S.E.2d 818,

819 (S.C. 1977). When construing an insurance policy, all terms should be considered together. MGC Mgmt. of Charleston, Inc., v. Kinghorn Ins. Agency, 520 S.E.2d 820, 823 (S.C. Ct. App. 1999). An insurer's obligation under an insurance policy is defined by the terms of the policy itself and cannot be enlarged by judicial construction. S.C. Ins. Co. v. White, 390 S.E.2d 471, 473 (S.C. Ct. App. 1990).

Lot 1 Policy

On August 21, 1989, Chicago Title issued an insurance policy covering Lot 1. Ellen P. Read is the named insured. The owner's coverage statement insures the title to land described in Schedule A. Schedule A describes the land covered in the Lot 1 policy as follows:[1]

> All that piece, parcel, lot or tract of land, with buildings and improvements thereon, situate, lying and being in Charleston County, South Carolina, and being shown and designated as "Lot 1, 4.29 Acres" on a plat by Robert Frank & Associates dated November 1, 1984 entitled in part "Wadmalaw Island, Charleston county, S.C. Plat Of A Division Of Lands Of Alma E. Wagner" and recorded at Plat Book BK, Page 145, RMC Office for Charleston County, South Carolina, and having such size, shape buttings, boundings, dimensions and location as will appear by reference to said plat which is incorporated herein by reference, be all the dimensions and measurements shown thereon a little or more less.

This description includes neither any property beyond Lot 1, 4.29 acres, nor an easement in neighboring land. The plat referred to shows a drainage easement over Lot 4 for the benefit of Lots 1, 2, and 3. The plat does not show that the drainage easement is a part of Lot 1.

The policy lists thirteen covered title risks. The plaintiffs contend that their right to use the drainage easement falls under Covered Title Risk 5, which provides coverage if the insured does "not have any legal right to and from the land." However, this argument is without merit

---

[1] The land description in Schedule A appears to be taken from the deed to Lot 1.

because it is undisputed that the plaintiffs have a legal right to ingress and egress from Lot 1 through Tack Point Extension Road. Therefore, the Lot 1 policy does not provide coverage for the plaintiffs' claim.

Lot 2 Policy

On December 20, 1991, Chicago Title issued an insurance policy covering Lot 2. Ellen P. Read is the named insured. The Lot 2 policy defines land as:

> The land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term 'land' does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

The policy insures the title to land described in Schedule A. Schedule A describes the land covered in the Lot 2 policy as follows:[2]

> All that piece, parcel, lot or tract of land, with buildings and improvements thereon, situate, lying and being in Charleston County, South Carolina, and being shown and designated as "Lot 2, 4.50 Acres" on a plat by Robert Frank & Associates dated November 1, 1984 entitled in pat [sic] "Wadmalaw Island, Charleston County, S.C. Plat Of A Division Of Lands Of Alma E. Wagner" and recorded at Plat Book BK, Page 145, RMC Office for Charleston County, South Carolina, and having such size, shape buttings, boundings, dimensions and location as will appear by reference to said plat which is incorporated herein by reference, be all the dimensions and measurements shown thereon a little or more less.

This description includes neither any property beyond Lot 2, 4.50 acres, nor an easement in neighboring land. The plat referred to shows a drainage easement over Lot 4 for the benefit of Lots 1, 2, and 3. The plat does not show that the drainage easement is a part of Lot 2.

The plaintiffs contend that the policy covers their right to use the drainage easement

---

[2] The land description in Schedule A appears to be taken from the deed to Lot 2.

because the policy insures against loss or damage incurred by the insured by reason of "[l]ack of a right of access to or from the land." However, this argument is without merit because it is undisputed that the plaintiffs have a right of access to and from Lot 2 through Tack Point Extension Road. Therefore, the Lot 2 policy does not provide coverage for the plaintiffs' claim.

Bad Faith Refusal to Pay Benefits

An insured may recover damages for a bad faith denial of coverage if he or she proves that there was no reasonable basis for the insurer's decision to deny benefits. Cock-N-Bull Steak House, Inc. v. Genarali Ins. Co., 466 S.E.2d 727, 730 (S.C. 1996). The plaintiffs cannot do so in this case because benefits have not become due under the insurance contract. Based on the policies' terms, Chicago Title had a reasonable basis for refusing to pay benefits and gave reasons for its denial of benefits under the contract. *See* id. (stating that the insurer's ability to present evidence as to why a claim was denied is a factor in determining whether a reasonable basis for denying benefits existed). Granting an insurer summary judgment on an insured's bad faith claim is appropriate when as in this case, the insured is not entitled to payments under the policies and the parties dispute only the legal interpretation of the insurance policies. Long v. Ohio Cas. Ins. Co., 21 Fed. Appx. 213, 214 (4th Cir. 2001).

Chicago Title's motion for summary judgment is granted.

**AND IT IS SO ORDERED.**

*C. Weston Houck*

November 13, 2006                         **C . WESTON HOUCK**
Charleston, South Carolina              **UNITED STATES DISTRICT JUDGE**